Citation Nr: 1205185 
Decision Date: 02/10/12 Archive Date: 02/23/12

DOCKET NO. 10-29 046 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manchester, New Hampshire


THE ISSUE

Entitlement to a compensable rating for a right ear hearing loss. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. Eckart, Counsel



INTRODUCTION

The veteran served on active duty from November 1950 to July 1951. 

This case comes before the Board of Veterans' Appeals (Board) from a November 2008 rating decision of November from the Regional Office (RO) of the Department of Veterans Affairs (VA), in Manchester, New Hampshire, which denied a compensable rating for right ear hearing loss.

The Veteran's representative in a December 2011 brief alleges that there is a pending appellate issue of entitlement to service connection for a left ear hearing loss disorder that is inextricably intertwined with the increased rating issue on appeal. The representative alleged that this issue must be remanded for a statement of the case in accordance with the Court's decision in Manlincon v. West, 12 Vet. App. 238, 240-41 (1999). A review of the evidence fails to show that any notice of disagreement has been filed in response to the rating decisions in March 1953, May 2007 or October 2010 that denied entitlement to service connection for a left ear hearing loss. 

While Veteran submitted to the VA a written request for a copy of his hearing test from his separation examination in May 2011, within one year of receiving a November 2010 notice of the most recent denial of this claim in October 2010, the request failed to express any disagreement with any rating action, nor did it express any intent to appeal. Likewise a March 2011 report of general information also described the Veteran having called to request a copy of his hearing test from separation, but made no reference to any intent to appeal the October 2010 rating. No other documents have been submitted that could be reasonably construed as a Notice of Disagreement pursuant to 38 C.F.R. § 20.201. As no Notice of Disagreement has been filed, the issue of service connection for a left ear disorder is not in appellate status. This matter is referred to the RO to clarify whether the Veteran wishes to submit an application to reopen this claim for service connection for a left ear hearing loss. As there is no inextricably intertwined issue in appellate status, the Board may proceed with a decision on the current issue on appeal. 

Since the RO's most recent adjudication of this issue in May 2010, additional evidence has been submitted, without a waiver of AOJ review. However, such records either do not pertain to the issue on appeal and, therefore, are not relevant, or else are duplicates of evidence already considered. This includes a report of an October 2010 VA examination that focused solely on the non-service connected left ear hearing loss, with no attention paid to the right ear. Thus there is no prejudice to the Veteran in adjudicating this claim.

A review of the electronic folder discloses no additional evidence pertinent to this matter.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDING OF FACT

Audiological evaluation establishes that the Veteran's service-connected right ear hearing loss is consistent with Level IV hearing impairment on most recent examination, with most severe impairment of Levels VII and VIII shown in exceptional hearing patterns demonstrated in June 2007 and September 2008. The Veteran's nonservice-connected left ear hearing loss is to be assigned a Level I hearing impairment.


CONCLUSION OF LAW

The criteria for a compensable disability rating for right ear hearing loss have not been met. 38 U.S.C.A. §§ 1155 , 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.383 , 3.385, 4.85, 4.86, and Diagnostic Code 6100 (2011).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duty to notify and assist

The VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2010); 38 C.F.R. § 3.159 (2010). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. For claims pending before VA on or after May 30, 2008, 38 C.F.R. § 3.159 was amended to eliminate the requirement that VA request that a claimant submit any evidence in his or her possession that might substantiate the claim. See 73 FR 23353 (Apr. 30, 2008). This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In the present case, the Veteran's claim on appeal was received in July 2008. The RO issued a duty to assist letter addressing the increased rating issue on appeal in July 2008, prior to adjudicating this matter in the November 2008 rating on appeal. 

The Veteran was provided initial notice of the provisions of the duty to assist as pertaining to entitlement to an increased rating, which included notice of the requirements to prevail on these types of claims and of his and VA's respective duties. The duty to assist letter notified the Veteran that VA would obtain all relevant evidence in the custody of a federal department or agency. He was advised that it was his responsibility to either send medical treatment records from his private physician regarding treatment, or to provide a properly executed release forms so that VA could request any identified private records for him. The Veteran was also asked to advise VA if there were any other information or evidence he considered relevant so that VA could help by getting that evidence. 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the U.S. Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. He received such notice in the July 2008 letter. 

VA must also make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). Service treatment records were previously obtained and associated with the claims folder. VA and private records were associated with the claims folder.

Assistance shall also include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The VA examination conducted in May 2010 provided a current assessment of the Veteran's condition based not only on examination of the Veteran, but also on review of the records. 

In summary, the duties imposed by 38 U.S.C.A. §§ 5103 and 5103A have been considered and satisfied. Through notices of the RO, the claimant has been notified and made aware of the evidence needed to substantiate his claim for a higher disability rating, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim decided on appeal. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the claimant or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter being decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

II. Increased Rating Laws and Analysis

Disability evaluations are determined by the application of a schedule of ratings that is based on the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2002 & Supp. 2010); 38 C.F.R., Part 4. Separate diagnostic codes identify the various disabilities. 38 C.F.R. § 4.1 requires that each disability be viewed in relation to its history and that there be emphasis upon the limitation of activity imposed by the disabling condition. 38 C.F.R. § 4.2 requires that medical reports be interpreted in light of the whole recorded history, and that each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.7 provides that, where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). A decision of the United States Court of Appeals for Veterans Claims (Court) has held that in determining the present level of a disability for any increased evaluation claim, the Board must consider the application of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. In appeals of the initial rating assigned following a grant of service connection, "staged ratings" or separate ratings for separate periods of time may be assigned based on the facts found following the initial grant of service connection. Fenderson v. West, 12 Vet. App. 119 (1999).

To evaluate the degree of disability for service-connected bilateral hearing loss, the rating schedule establishes eleven (11) auditory acuity levels, designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85, Diagnostic Code 6100. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

The current rating criteria include an alternate method of rating exceptional patterns of hearing, as defined in 38 C.F.R. § 4.86. Under those provisions, the pure tone thresholds at the four specified frequencies (1000, 2000, 3000, and 4000 hertz) are 55 decibels or more, or when the pure tone thresholds are 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next highest Roman numeral. 38 C.F.R. § 4.86. Each ear will be evaluated separately. In this case, the Veteran's most recent test results for the right ear do not meet the criteria for the alternate rating method, and thus his right ear hearing loss will be rated by the usual method, except that the Board will additionally consider Table VIa only for the results of the June 2007 VA audiology test and the September 2008 Compensation and Pension VA audiology test as they show patterns of exceptional hearing loss, with the puretone thresholds at 1000 Hertz measuring less than 30 decibels, while at 2000 Hertz they measure more than 70 decibels. 38 C.F.R. § 4.85(c). The Board will afford the Veteran the benefit of consideration under Table VIa for these tests only, as the subsequent testing is outside the range of exceptional hearing loss.

If impaired hearing is service-connected in only one ear, in order to determine the percentage evaluation from Table VII, the non-service-connected ear will be assigned a Roman numeral designation for hearing impairment of I, subject to the provisions of 38 C.F.R. § 3.383. 38 C.F.R. § 4.85(f). See also Boyer v. West, 210 F.3d 1351 (Fed.Cir. 2000).

The report of a June 2007 VA audiological examination (not for compensation/pension purposes) revealed that the Veteran's pure tone thresholds measured in decibels at 1000, 2000, 3000 and 4000 Hertz for the right ear were 20,75, 105 and 95. His average score for the right ear was 73.7 decibels (rounded up is 74 decibels). Speech discrimination for the right ear was 86. His non service connected left ear measurements are not relevant as that ear will be assigned a Level I hearing impairment pursuant to 38 C.F.R. § 3.383 .

The report of a September 2008 VA audiological examination revealed that the Veteran's pure tone thresholds measured in decibels at 1000, 2000, 3000 and 4000 Hertz for the right ear were 25, 80, no response, and no response. A value of 105 was used for the two frequencies that resulted in no response. His average score for the right ear was 78.75 decibels (rounded up is 79 decibels). Speech discrimination for the right ear was 86. 

The report of a May 2010 VA audiological examination revealed that the Veteran's pure tone thresholds measured in decibels at 1000, 2000, 3000 and 4000 Hertz for the right ear were 35, 85, no response, and 100. A value of 105 was used for the frequency that resulted in no response. His average score for the right ear was 81.2 decibels (rounded down is 81 decibels). Speech discrimination for the right ear was 66. 

An October 2010 VA ears and audiological disorders was limited to the nonservice connected left ear hearing loss disorder, to address the etiology of this, and notably did not address the right ear. Thus it is not relevant to this matter, as discussed in the introduction. 

Based on a review of the evidence, the Board finds that a compensable rating for right ear hearing loss is not shown. His right ear hearing is shown to be at Level IV based on the May 2010 VA examination findings under Table VI. He is under Level III criteria for both the September 2008 VA examination findings and the June 2007 VA audiology findings under Table VI. Even evaluating these findings under the criteria for exceptional hearing loss, his hearing would be at Level VII in June 2007 and Level VIII in September 2008. These results for the service-connected right ear, and the nonservice-connected left ear (mandated to be rated at Level I) fall firmly within the criteria for a noncompensable percent rating under Table VII, thus a higher rating is not warranted. There is no other evidence to suggest that that a compensable rating is warranted for the right ear hearing loss. 

In summary the preponderance of the evidence is against a compensable rating for right ear hearing loss.

Extraschedular Consideration

Having addressed the schedular rating for the right ear hearing loss, the Board now addresses whether referral to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for an extraschedular rating is warranted. 

Under 38 C.F.R § 3.321(b)(1), in exceptional cases where schedular evaluations are found to be inadequate, consideration of an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities is made. 

The governing norm in an exceptional case is a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with the Veteran's employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. See 38 C.F.R § 3.321(b)(1) (2011).

In this case, the Rating Schedule for evaluating the Veteran's disability of right ear hearing loss is found to be adequate. 

In addition, it has not been shown that this disability has required frequent periods of hospitalization or has produced marked interference with all types of employment. The evidence fails to show that the Veteran has had any hospital treatment for it. 

As far as employability, none of the evidence available reflects that the service-connected hearing loss affects his ability to work in a material fashion, as he is shown to have other medical disabilities impacting his employability such as a nonservice connected pulmonary fibrosis that is progressing and is medically determined to be ultimately terminal. None of the examinations found him to be unemployable due to his service connected disorder of hearing loss. 

Therefore, a remand or referral of a claim for a total rating due to individual unemployability (TDIU) is not necessary under the Court's ruling in Rice v. Shinseki, 22 Vet. App. 447 (2009).


ORDER

Entitlement to a compensable rating for right ear hearing loss is denied. 



____________________________________________
DENNIS F. CHIAPPETTA
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs