Citation Nr: 1812666 
Decision Date: 02/28/18 Archive Date: 03/08/18

DOCKET NO. 12-12 752 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to a rating in excess of 70 percent for posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Attorney Robert V. Chisholm


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Schechner, Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from August 1965 to March 1966, from August 21, 1966 to September 3, 1966, and from April 1967 to March 1969 (with additional service in the Marine Corps reserves). This matter is before the Board of Veterans' Appeals (Board) on appeal from a May 2010 rating decision by the St. Petersburg, Florida Regional Office (RO) of the Veterans Affairs (VA) that granted service connection for PTSD, rated 50 percent, effective October 6, 2009. In July 2014, a videoconference hearing was held before the undersigned; a transcript is in the record. In September 2014 and October 2017, the matter was remanded for additional development. An interim [November 2017] rating decision granted an increased initial rating of 70 percent for the Veteran's PTSD.


FINDING OF FACT

At no time under consideration is PTSD shown to have been manifested by symptoms productive of impairment greater than occupational and social impairment with deficiencies in most areas; symptoms productive of total occupational and social impairment are not shown.


CONCLUSION OF LAW

A rating in excess of 70 percent for PTSD is not warranted . 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 3.321, 4.130, Diagnostic Code (Code) 9411 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). As the rating decision on appeal granted service connection and assigned a disability rating and effective date for the award, statutory notice had served its purpose, and its application was no longer required. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). A May 2012 statement of the case (SOC) provided notice on the "downstream" issue of entitlement to an increased initial rating, and a November 2017 supplemental SOC readjudicated the matter after the Veteran responded and further development was completed. 38 U.S.C. § 7105; see Mayfield v. Nicholson, 20 Vet. App. 537, 542 (2006). 

The Veteran has not raised any issues with VA's duties to notify and assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument). A deficiency under Bryant v. Shinseki, 23 Vet. App. 488 (2010), is not alleged (see Dickens and Scott). The Board also finds there has been substantial compliance with its October 2017 remand directives. 

Legal Criteria, Factual Background, and Analysis

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

With the initial rating assigned following a grant of service connection, separate (staged) ratings may be assigned for separate periods of time, based on the facts found. Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt as to the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3.
PTSD is rated under 38 C.F.R. § 4.130, Code 9411 and the General Rating Formula for Mental Disorders. A 70 percent rating is warranted when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 

A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Code 9411. 

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remissions. 38 C.F.R. § 4.126(a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. However, when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation on the basis of social impairment. 38 C.F.R. § 4.126(b).

The Board notes that it has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000)(VA must review the entire record, but does not have to discuss each piece of evidence.) Hence, the Board will summarize the relevant evidence, as deemed appropriate, and the Board's analysis will focus specifically on what the evidence shows, or does not show, as to this claim. 

On February 2010 VA examination, the Veteran reported receiving mental health treatment for PTSD and major depressive disorder since October 2009, including psychiatry appointments and PTSD group therapy twice a month, with mild to moderate response. Citalopram was prescribed for anxiety, sleep, and PTSD symptoms. He reported that his sleep, impulse control and mood improved with therapy, and he noticed a decreased incidence of intrusive thoughts; he continued to be hypervigilant and guarded. He reported having panic attacks, described as sometimes moderate and sometimes severe, occurring once per month and lasting from one to three minutes; he reported that they occurred once or twice per week or sometimes daily before he began his current treatment. He reported depressive symptoms including depressed mood, anhedonia, and low energy, mild to moderate, twice per week and lasting for 2 to 3 hours; before he began taking medication, the depressive symptoms occurred almost every day and were moderate to severe, lasting 4 to 8 hours and sometimes the whole day. There were no hospitalizations for a mental disorder. There were no issues with alcohol use or other substance use. He reported a good relationship with an adult son; he lived alone with no close friends. He reported a tendency to isolate and had almost no contact with family members; his few social contacts were with the PTSD group peers. He reported going to family gatherings occasionally, on holidays, and most of the time he stayed at home watching TV. There was no history of suicide attempts, violence, or assaultiveness. He described himself as a loner, not sociable, with distant relationships with family and peers. He reported that his PTSD symptoms and panic attacks interfered with job performance and socialization.

On mental status examination, the Veteran displayed tense psychomotor activity and coherent speech. His attitude was cooperative and attentive. His affect was constricted and his mood was good. His attention was intact and he was oriented to all spheres. His thought process displayed a paucity of ideas and thought content displayed a preoccupation with one or two topics. He reported no delusions or hallucinations, his judgment and insight were intact, and he had no inappropriate behavior. He did not have obsessive/ritualistic behavior or suicidal or homicidal thoughts. He reported good impulse control and no episodes of violence. He reported no problems with activities of daily living, and he was able to maintain minimum personal hygiene. He reported sleep impairment. His remote, recent, and immediate memory was normal. The examiner opined that the Veteran's symptoms were mild to moderate, occurring on average 3 times per week, and lasting a few minutes to a few hours; the symptoms were worse around the Fourth of July. The diagnoses included PTSD and major depressive disorder; the examiner opined that symptoms attributed to PTSD included intrusive thoughts, avoidance, hypervigilance, exaggerated startle response, irritability, and impaired sleep; and symptoms due to depressive disorder included depressed mood, anhedonia, low motivation, and low energy. A GAF score of 55 was assigned for PTSD, and a GAF score of 60 was assigned for major depressive disorder. The examiner opined that psychological testing indicated symptoms of moderate range, and that psychology and psychiatry evaluations in the records are consistent with the diagnosis; his prognosis was fair to good with continuation of treatment. The examiner opined that the Veteran's PTSD symptoms affected his job performance, family role, social/interpersonal relationships, leisure and recreation; his job performance was significantly affected by poor attention/concentration, low energy level and difficulty to maintain pace and persistence, fatigue secondary to sleep disturbance due to nightmares, tendency to isolate, and chronic irritability and outbursts of anger. The examiner opined that there was reduced reliability and productivity due to PTSD symptoms including reduced productivity due to low concentration, irritability, and poor interpersonal relationships. 

Based on this evidence, the May 2010 rating decision on appeal granted service connection for PTSD, rated 50 percent, effective October 6, 2009.

On November 2010 private examination, the Veteran reported that PTSD group therapy both hurt and helped him; it reminded him of his past and he experienced flashbacks but he also felt he was not alone with his nightmares and experiences. He reported being constantly anxious and depressed, and very easily agitated, with recurring nightmares and flashbacks. He reported avoiding people, crowds, or anything that reminded him of the war. He reported having difficulty in all relationships and a limited affective range of feelings. He reported very disturbed sleep, irritability, and inability to take orders or instructions; he reported isolating himself and staying home most of the day with little social contact except for a few other veterans from his PTSD group.

On mental status examination, the Veteran was neatly attired, friendly and cooperative, and oriented to all spheres. At times, his affect became sullen with tears in his eyes and he averted his gaze. He reported auditory hallucinations, mostly in the evening, described as the Vietnamese speaking. He reported visions of Viet Cong and flashbacks to his war experiences. He reported poor concentration and trouble remembering dates and names of people, including his own relatives. He denied suicidal ideation and reported always being on guard. He reported poor sleep and nightmares. His judgment and insight were fair and he was able to abstract. His long term memory was excellent, recent memory was fair to good, and immediate memory was poor. The diagnostic impression was PTSD with delayed onset, and a GAF score of 35 to 40 was assigned. Dr. Schosheim opined that the Veteran's disability causes gross impairment in his thought processes (cited as feeling agitated and guarded all of the time), persistent hallucinations and delusions of paranoia, severe difficulty in memory for immediate recall and for names of close relatives or people he recently met, markedly impaired concentration and being withdrawn and isolative, difficulty communicating well with others, being easily irritated, difficulty accepting criticism or direction, and volatile and non-effective relationships.

At the July 2014 hearing, the Veteran testified that he receives regular VA psychiatric treatment including group therapy.

In a September 2014 VA treatment summary letter, the PTSD clinic medical director stated that the Veteran was being treated for chronic PTSD in the clinic, attending group and individual therapy regularly and taking prescribed psychotropic medications; he had been compliant with his treatment. It was noted that he had been in treatment in the clinic since October 2009. The medical director stated that the Veteran continued to suffer from PTSD and symptoms related to traumatic experiences in service, including depression, recurrent nightmares, sleep problems, hypervigilance, isolation, irritability, impaired concentration, and low tolerance for stressors. It was noted that his psychiatric and medical condition further exacerbated his PTSD symptoms. The medical director opined that the Veteran's chronic PTSD and depression affect his ability to function in occupational and social (noting that he has difficulty maintaining employment due to his medical and psychiatric problems). The medical director noted that the Veteran's GAF was 50.

In a June 2016 statement, the Veteran reported that his nightmares leave him unable to sleep for more than four hours per night. He reported becoming very depressed when he sees anything about the military or that reminds him of being in the service. He reported avoidance of groups of people as much as possible if he has to go out in public; when at home, he isolates himself in a room to be by himself, away from everyone. He reported that crowds of people make him feel anxious and unsafe; if he goes out to eat, sits with his back towards the wall, facing the exit, because knowing there are people behind him makes him anxious. 

On December 2016 VA examination, the Veteran reported that he lived alone and had been involved in a casual romantic relationship off and on for the previous year, which he described as boring. He reported having a fair relationship with his adult son because they do not see eye to eye. He saw his three grandchildren three times per year. He denied being close to any other family member. He reported having one friend with whom he talked once per month. He reported that he rarely participated in social activities, stating that he does not trust many people and is a little depressed. He reported frequently becoming involved in verbal altercations with others; he described an incident at a barbershop when, during discussion about a football game, he pulled out his knife; he stated that he now tries to avoid such incidents. He denied any relevant behavioral history since the previous exam. He reported that he last worked in approximately 2001 as a carpenter; while employed, he had difficulty getting along with others, struggled with authority, and was terminated from several positions due to irritability. The examiner noted that the Veteran continued to participate in regular VA mental health treatment, citing the most recent psychiatric visit in November 2016, at which time he reported that he was maintaining stable mood and sleep on his current medication regimen; he reported having some down days after the election but had noticed improvement in his mood after the holidays. His current medications included Sertraline for mood and anxiety and Trazodone for sleep. He had not had any psychiatric hospitalizations or psychological treatment in the community since the previous VA examination.

On mental status examination, the Veteran's reported symptoms included depressed mood, suspiciousness, chronic sleep impairment, mild memory loss (such as forgetting names, directions or recent events), flattened affect, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances including work or a worklike setting. He described feeling down some days, somewhat depressed, and then he calls one of his granddaughters to talk and his mood improves. He appeared depressed with a flat affect. He was oriented in all spheres. His appearance was somewhat disheveled. His speech was within normal limits and his attitude toward the examiner was polite and cooperative. Regarding his thought content/process, he had some difficulty remaining focused and on topic. His psychomotor activity was within normal limits. He denied any hallucinations or delusions. His judgment was adequate at present and impaired in the past when angered. His insight was adequate. He denied any present suicidal ideation, intent, or plan, but admitted to suicidal ideation in the past, approximately 10 years earlier; he had no history of past suicide attempts. He denied any homicidal ideation, intent, or plan. The examiner opined that the Veteran is capable of managing his financial affairs. The diagnoses were PTSD and recurrent moderate major depressive disorder. The examiner opined that, given the chronicity and progressiveness (and known overlap of symptoms) of the diagnoses, it is not possible to separate the individual effects of each disorder. The examiner opined that the Veteran's psychiatric disabilities result in occupational and social impairment with reduced reliability and productivity.

On May 2017 private psychological evaluation, Dr. Morris stated that the Veteran was cooperative and motivated, his tone of voice inferred depression, he had problems with memory at times, and he tried to be helpful in his comments and statements that were considered to be reliable. The Veteran reported no legal history and no alcohol or drug history. He reported that he attended group therapy twice a month for about 6 years beginning in 2008; he graduated and received a certificate and now sought treatment only for his medication every 5 weeks and a therapy session with the psychiatrist. He lived by himself and performed all daily activities independently. He reported demotivation associated with depression, with difficulty initiating simple chores, procrastination, and difficulty completing chores in a reasonable period of time due to low motivation. He reported deficits in his social skills, stating that he trusts nobody and always sits with his back to the wall when in public. He reported symptoms of panic attacks when in crowds or enclosed spaces. He reported infrequently visiting outside of his home and being anhedonic without hobbies. He shopped in the early morning or late at night with his granddaughter when fewer people were present, and sat in back when he attended church (three times a month on average).

On mental status examination, the Veteran was oriented in all spheres. His overall emotional state was one of severe depression with sad affect; his mood and affect were congruent. He reported that he does not rest well, getting about 2 to 3 hours of sleep on average, which was sporadic with nightmares. His appetite was fair. He did not endorse currently having suicidal ideation; on the Beck Depression Inventory, he circled a response indicating that he has thoughts of killing himself but would not carry them out. He reported having occasional crying spells, usually at special occasions. He reported having explosive outbursts all the time, citing an anger problem. His thoughts were connected and logical. His reported symptoms included anxiety or nervousness when around situations that remind him of his traumas, flashbacks, anger toward himself or others for their part in the traumas, guilty feelings about the traumas, feelings as if the traumas were reoccurring and thoughts about them, and difficulty recalling important aspects of the trauma. The diagnosis was PTSD with major depressive disorder, which the examiner opined has caused occupational and social impairment with deficiencies in most areas since at least October 2009 to the present, as evidenced by persistent withdrawal, self-isolation, inability to establish and maintain effective relationships, near continuous panic and depression, difficulties with concentration and irritability, and difficulty adapting to stressful circumstances. The examiner opined that in conjunction with the PTSD symptoms, the Veteran presents with symptoms of panic disorder with agoraphobia and general anxiety disorder. Dr. Morris cited Dr Schosheim's November 2010 opinion recommending a 100 percent rating for PTSD and concurred, opining that the Veteran "presents with total unemployability". Dr. Morris opined that the Veteran would be unable to complete tasks in a timely and acceptable manner on a sustained basis over a reasonable period of time and is therefore not able to secure and follow substantially gainful employment due to the severity of his psychiatric disability.

Based on this evidence, a November 2017 rating decision granted an increased initial rating of 70 percent for the Veteran's PTSD with major depressive disorder, effective October 6, 2009.

The reports of the VA and private examinations, treatment records, lay statements, and the Veteran's testimony, overall, do not show his PTSD to at any time under consideration have been of such severity as to warrant a 100 percent schedular rating. There is no evidence of symptoms such as gross impairment in thought processes or in communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name; or any other symptoms of similar gravity. [The Board is aware that the Court has emphasized that the symptoms in the schedular criteria are merely examples and are not all-inclusive. However, the absence of such symptoms is noted to acknowledge that the Court has also indicated separately that such symptoms provide independent bases for a finding that a 100 percent schedular rating is warranted.] Although Dr. Schosheim opined that the Veteran's disability causes gross impairment in his thought processes, feelings of agitation and guardedness do not constitute gross impairment. Indeed, the treatment records and examinations consistently show appropriate thought processes and appropriate behavior. On private examination in November 2010 the Veteran reported delusions and hallucinations , but on other examinations he denied delusions and hallucinations; there is no evidence of persistent delusions or hallucinations. While he did report suicidal thoughts at times, he has consistently indicated that he would never act on such thoughts. While the observations by the VA and private examiners and treatment providers suggest that he has increasingly limited social relationships and increased withdrawal, such impairment is encompassed by the criteria for the 70 percent rating currently assigned (which contemplate deficiencies in most areas). What is significant is that he continues to function adequately in activities of daily living, maintains his familial relationships and one friendship, drives, shops, attends church regularly, tends to his home, and participates in leisure activities such as television. The disability picture presented is not one consistent with the criteria for a schedular 100 percent rating which is assigned for total occupational and social impairment. Notably, the private psychologists who evaluated the Veteran (at his/his attorney's request) likewise did not indicate that total occupational and social impairment was found; despite recommending a 100 percent rating, Dr. Morris specifically opined that the Veteran's psychiatric disabilities cause occupational and social impairment with deficiencies in most areas. Consequently, such rating for PTSD is not warranted for any period of time under consideration. 

The Board also notes the lay statements submitted by the Veteran in support of this claim. Those statements detail the types of problems that result from his PTSD symptoms . The levels of functioning impairment described by the Veteran are encompassed by the criteria for the 70 percent rating assigned; thus even his own lay statements do not support that a schedular 100 percent rating is warranted.

A November 2017 rating decision granted the Veteran a TDIU rating; he has not expressed disagreement with the effective date assigned.


ORDER

A 100 percent schedular rating for the Veteran's PTSD is denied.


____________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs