Citation Nr: 1801837 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 14-10 069 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial rating in excess of 20 percent for right knee torn meniscus and osteoarthritis (OA).

2. Entitlement to an initial rating in excess of 20 percent for left knee torn meniscus, OA, and patellofemoral syndrome.

3. Entitlement to an initial rating in excess of 10 percent for dermatitis of the face and scalp.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States




ATTORNEY FOR THE BOARD

B. N. Quarles, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from August 2001 to October 2010.

This matter comes on appeal before the Board of Veterans' Appeals (Board) from an April 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. In January 2016, the Board remanded the appeal for further development.

In a September 2016 rating decision, with an effective date of October 3, 2010; the RO assigned a 20 percent rating for the Veteran's right knee torn meniscus and OA, and a 20 percent rating for left knee torn meniscus, OA, and patellofemoral syndrome. As this is not considered a full grant of the benefits sought on appeal, the issues are still before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

The issue of entitlement to an initial rating in excess of 10 percent for dermatitis of the face and scalp is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's service-connected right knee disability manifests in torn meniscus and locking pain; it does not manifest in ankylosis, recurrent subluxation or lateral instability, limitation of flexion to 90 degrees or less, limitation of extension, or tibia and fibula impairment.

2. The Veteran's service-connected left knee disability manifests in torn meniscus and locking pain; it does not manifest in ankylosis, recurrent subluxation or lateral instability, limitation of flexion to 90 degrees or less, limitation of extension, or tibia and fibula impairment.

3. The Veteran right knee OA has manifested in additional functional loss due to pain and flare-ups since November 1, 2011.

4. The Veteran left knee OA has manifested in additional functional loss due to pain and flare-ups since November 1, 2011.


CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 20 percent for a right knee torn meniscus have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5256-5263 (2017).

2. The criteria for an evaluation in excess of 20 percent for a left knee left knee torn meniscus and patellofemoral syndrome have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5256-5263 (2017).

3. The criteria for a separate rating of 10 percent, but no higher, for OA of the right knee with painful motion from November 1, 2011 have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.59, 4.71a, Diagnostic Codes 5003, 5260, 5261 (2017); DeLuca v. Brown, 8 Vet. App. 202 (1995).

4. The criteria for a separate rating of 10 percent, but no higher, for OA of the left knee with painful motion from November 1, 2011 have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.59, 4.71a, Diagnostic Codes 5003, 5260, 5261 (2017); DeLuca v. Brown, 8 Vet. App. 202 (1995).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

As a preliminary matter, the Board has reviewed the claims file and finds that there exist no deficiencies in VA's duties to notify and assist that would be prejudicial and require corrective action prior to a final Board determination. See 38 U.S.C. §§ 5103, 5103A (2012); 38 C.F.R. § 3.159 (2016); see also Bryant v. Shinseki, 23 Vet. App. 488 (2010) (regarding the duties of a hearing officer); Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (corrective action to cure a 38 C.F.R. § 3.159(b) notice deficiency); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004) (timing of notification).

The Board also notes that, to the full extent possible, VA complied with all prior remand instruction requests, and there exist no deficiencies in VA's duties to notify and assist in that regard. See Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order); but see D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required). 

While additional medical evidence was received since the September 2016 supplemental statement of the case (SSOC), which addressed the issues currently on appeal, none of this evidence is pertinent to the denials of claims herein. The Veteran's new evidence is pertinent to the Veteran's dermatitis of the face and scalp, which is addressed in the remand portion of this decision; and does not address the Veteran's bilateral knee disabilities. Hence, the Board finds no prejudice in proceeding with its decision. Bernard v. Brown, 4 Vet. App. 384, 394 (1993).




II. Applicable Laws and Regulations

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where entitlement to compensation has already been established, and an increase in disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, the regulations do not give medical reports precedence over current findings. See Francisco v. Brown, 7 Vet. App. 55 (1994); 38 C.F.R. § 4.2. Staged ratings are, however, appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. See generally Hart v. Mansfield, 21 Vet. App. 505 (2007). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise the lower rating will be assigned. See 38 C.F.R. § 4.7.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). 
Diagnostic Code 5010 concerns arthritis due to trauma; it requires establishment by X-ray evidence. Diagnostic Code 5010 is to be rated the same as Diagnostic Code 5003. Under Diagnostic Code 5003, degenerative or traumatic arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. However, in the absence of limitation of motion, the disability is to be rated as 10 percent disabling with x-ray evidence of involvement of two or more major joints or two or more minor joint groups; and as 20 percent disabling with x-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. Disability ratings under Diagnostic Code 5003 is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added. Multiple involvements of the interphalangeal, metacarpal and carpal joints of the upper extremities are considered groups of minor joints. 38 C.F.R. § 4.45.

The normal range of motion of the knee is from 0 degrees extension to 140 degrees flexion. 38 C.F.R. § 4.71, Plate II.

Under Diagnostic Code 5260, pertaining to limitation of leg flexion, a noncompensable evaluation is assigned where flexion is limited to 60 degrees. A 10 percent rating is warranted where flexion is limited to 45 degrees. A 20 percent evaluation is for application where flexion is limited to 30 degrees. Finally, a 30 percent rating applies where flexion is limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Under Diagnostic Code 5261, pertaining to limitation of leg extension, a noncompensable evaluation is assigned where extension is limited to 5 degrees. A 10 percent rating is warranted where extension is limited to 10 degrees. A 20 percent evaluation is for application where extension is limited to 15 degrees. A 30 percent rating applies where extension is limited to 20 degrees. A 40 percent rating is warranted where extension is limited to 30 degrees. Finally, a 50 percent evaluation is warranted where extension is limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

Knee impairment with recurrent subluxation or lateral instability is rated 10 percent when slight, 20 percent when moderate, and 30 percent when severe. 38 C.F.R. § 4.71a, Diagnostic Code 5257. 

Symptomatic removal of the semilunar cartilage is assigned a maximum 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5259. Disabilities involving cartilage, semilunar, dislocated, with frequent episodes of locking, pain, and effusion into the joint are assigned a maximum 20 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5258.

VA's General Counsel has held that a claimant who has arthritis and instability of the knee may be rated separately under Diagnostic Codes 5003 and 5257, respectively. VAOPGCPREC 23-97; 62 Fed. Reg. 63,604 (July 1, 1997; revised July 24, 1997). The General Counsel subsequently clarified in VAOPGCPREC 9-98 (August 14, 1998) that for a knee disability rated under Diagnostic Code 5257 to warrant a separate rating for arthritis based on X-ray findings and limitation of motion, limitation of motion under Diagnostic Code 5260 or Diagnostic Code 5261 need not be compensable but must at least meet the criteria for a zero-percent rating. VA's General Counsel further explained that, if a Veteran has a disability rating under Diagnostic Code 5257 for instability of the knee, a separate rating for arthritis could also be based on X-ray findings and painful motion under 38 C.F.R. § 4.59. This is because, read together, Diagnostic Code 5003 and 38 C.F.R. § 4.59 provide that painful motion due to degenerative arthritis, which is established by X-ray, is deemed to be limitation of motion and warrants the minimum rating for a joint, even if there is no actual limitation of motion. See Lichtenfels v. Derwinski, 1 Vet. App. 484, 488 (1991).

VA's General Counsel has additionally held that separate ratings may also be assigned for limitation of knee extension and flexion. VAOPGCPREC 9-2004; 69 Fed. Reg. 59, 990 (2004). Specifically, where a Veteran has both a compensable level of limitation of flexion and a compensable level of limitation of extension of the same knee, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg and knee. Id.

III. Analysis

The Board has reviewed the Veteran's medical records and finds the Veteran's symptomatology in both the right and left knees, apart from arthritis, most closely approximates the assigned 20 percent disability ratings. The Veteran was afforded June 2010 and May 2016 VA orthopedic examinations, and she was afforded a November 2011 Disability Benefits Questionnaire (DBQ) to examine both the right and left knees. 

During the November 2011 DBQ, the Veteran reported weakness, stiffness, giving way, locking, tenderness and pain in her right and left knees. She denied experiencing swelling, redness, lack of endurance, fatigability, effusion, subluxation, and dislocation. The Veteran reported flare-ups of both knees, predicated on physical activity and alleviated by rest, which caused limitation of motion and extreme pain after running or walking long distances. On examination, the examiner found weakness and tenderness in both knees, and observed negative results for instability, effusion, guarding movement, or subluxation in either knee. The right knee showed crepitus, and neither knee showed genu recurvatum, locking, or additional limitation caused by pain, fatigue, weakness, lack of endurance, or incoordination after repetitive use. The May 2016 examiner noted pain on examination, additional functional loss in flexion and extension, tenderness, and crepitus in both knees. The Veteran reported flare-ups caused by walking, running, climbing stairs and prolonged sitting. 

The Veteran is currently evaluated with a 20 percent disability rating for both knees under Diagnostic Code 5258. 20 percent is the maximum schedular rating allowable under Diagnostic Code 5258,. In accordance with the rating criteria for the knee, the Veteran's evidence would need to display ankylosis of the knee; subluxation or lateral instability; flexion of the knee limited to at least 60 degrees; extension of the knee limited to at least 10 degrees; impairment of the tibia and fibula; or genu recurvatum to warrant a higher evaluation for the right and left knee disabilities. 

The Veteran's medical records during the period of appeal were negative for any evidence to support ankylosis, subluxation, lateral instability, impairment of the tibia and fibula, compensable limitation of flexion, compensable limitation of extension, and genu recurvatum of the right or left knees. The Veteran displayed full range of motion in both the right and left knees during the June 2010 and November 2011 examinations. The May 2016 examiner revealed flexion in the right knee limited to 110 degrees and flexion in the left knee limited to 115 degrees. Accordingly, Diagnostic Codes 5256, 5257, 5261, 5262, and 5263 cannot serve as a basis for a higher rating. 38 C.F.R. § 4.71a.

Prior to the November 1, 2011 DBQ examination, objective medical evidence was negative for additional functional loss due to pain and flare-ups of the right and left knees. On November 1, 2011, the Veteran reported flare-ups of both knees which resulted in limited motion and extreme pain. On May 11, 2016, the Veteran displayed limited flexion in both knees, the examiner found additional functional loss, and the Veteran reported flare-ups caused by daily activities such as walking, sitting, and climbing stairs. The Veteran's medical records show radiographic evidence of her OA.

After review of the evidence of record, the Board finds that separate 10 percent evaluations are warranted for the knee OA disabilities, as distinct from the service-connected disabilities rated under Diagnostic Code 5258, given the findings of painful motion during both her November 2011 and May 2016 examinations. The Board notes that Diagnostic Code 5258 does not preclude consideration of a separate rating for limitation of motion, and therefore is not considered pyramiding. See Lyles v. Shulkin, Vet. App., No. 16-0994, 2017 WL 5891831 at 7, 2017 U.S. App. Vet. Claims LEXIS 1704 at 21 (Vet. App. Nov. 29, 2017) (concluding that the Board erred when it "read into [DC 5257] nonexistent evaluation criteria"); see also Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017) (concluding that the Board "erred in applying a standard that exceeded that set forth in the relevant evaluation criteria"); 38 C.F.R. § 4.14 (the evaluation of the same disability under various diagnoses is to be avoided). The Veteran's symptoms warrant the 20 percent rating under Diagnostic Code 5258 independent of the limited, painful motion of the right and left knees. As such, when considering the noncompensable, painful limitation of motion of the left knee, separate 10 percent ratings are warranted for both knees. See 38 C.F.R. §§ 4.59, 4.71a, Diagnostic Codes 5260. 

A higher rating is not warranted for the painful motion when considering limitation of flexion as the evidence clearly establishes that there is no compensable flexion or extension in this case. 38 C.F.R. § 4.71a, Diagnostic Codes 5260 and 5261. As the knee is considered a single major joint, a higher rating is not warranted based on Diagnostic Code 5003, which requires involvement of two or more major joints and occasional incapacitating exacerbations for a 20 percent rating. 38 C.F.R. § 4.71a.

When determining what disability rating is appropriate, the Board has considered the Veteran's statements regarding the difficulty she experiences walking, running, and climbing stairs as a result of her knee pain. The Board also acknowledges that painful motion of the Veteran's knees has been documented. However, the Veteran's subjective complaints and functional effects were taken into account and discussed by the VA examiners and were considered in determining functional loss. Such functional loss is a predicate for the separate ratings assigned here but does not support even higher ratings.

Accordingly, given the Veteran's total symptomatology, the Board finds that a rating in excess of 20 percent is not warranted for the current right and left knee disabilities evaluated under Diagnostic Code 5258, but separate ratings of 10 percent, but no higher, are warranted for her right and left knee OA disabilities, as of November 1, 2011.

The Board has also considered a total disability based on individual unemployability (TDIU), as a claim for increased compensation can encompass a claim for TDIU. Rice v. Shinseki, 22 Vet. App. 447, 452-53 (2009). In the Veteran's most recent VA examination, she reported that she is currently employed when discussing the effects of her bilateral knee disabilities on her current employment, and the Veteran has not asserted that her disabilities render her unemployable. According, the Board finds that TDIU is not part of the Veteran's claim for an increased rating. Neither the Veteran nor her representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Entitlement to an evaluation in excess of 20 percent for right knee meniscus tear is denied.

Entitlement to an evaluation in excess of 20 percent for left knee meniscus tear and patellofemoral syndrome is denied.

Entitlement to a separate 10 percent rating for right knee OA and painful motion, from November 1, 2011, is granted, subject to the laws and regulations governing the payment of monetary benefits.

Entitlement to a separate 10 percent rating for left knee OA and painful motion, from November 1, 2011, is granted, subject to the laws and regulations governing the payment of monetary benefits.


REMAND

In a September 2016 rating decision, the RO granted service connection for dermatitis of the face and scalp with a disability rating of 10 percent. The Veteran disagreed with this decision in May 2017, filing a notice of disagreement (NOD). The NOD was filed within the requisite time period. 38 C.F.R. §§ 20.201, 20.302. To date, the RO has not acknowledged receipt of the Veteran's NOD and has not issued a statement of the case (SOC).

After a NOD has been filed in any claim, the RO is required to issue a SOC containing a summary of the evidence, the applicable laws and regulations, and an explanation as to the decision previously reached, unless the Veteran has withdrawn the NOD. 38 C.F.R. §§ 19.28, 19.29, 19.30. Technically, when there has been an initial RO adjudication of a claim and a notice of disagreement has been filed as to its denial, thereby initiating the appellate process, a remand is required for procedural reasons. Manlincon v. West, 12 Vet. App. 238 (1999).

Thus, the Board accepts limited jurisdiction over this issue for the sole purpose of remanding to order issuance of a SOC along with information about the process for perfecting an appeal as to this claim, if the Veteran so desires.

Accordingly, the case is REMANDED for the following action:

Issue an SOC to the Veteran and her representative which addresses the matter of severance of service connection for a left knee condition. The Veteran should be given the appropriate opportunity to respond to the SOC. The AOJ should advise the Veteran that the claims file will not be returned to the Board for appellate consideration of that issue following the issuance of the SOC unless she perfects her appeal.

The Veteran has the right to submit additional evidence and arguments on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This appeal must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs